Eric A. Welter, Bar No. 270591
  eaw@welterlaw.com
WELTER LAW FIRM, P.C.
20130 Lakeview Center Plaza, Suite 400
Ashburn, VA 20147
Telephone: (703) 435-8500
Facsimile: (703) 435-8851

Julie R. Trotter, Bar No. 209675
  jtrotter@calljensen.com
Mireya A.R. Llaurado, Bar No. 194882
  mllaurado@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000

Attorneys for Defendant 7-Eleven, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL JOURDEN, an individual, on behalf of herself, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>7-ELEVEN, INC., a Texas corporation; and DOES 1-50, Inclusive,<br><br>Defendants. | Case No. **'23CV2156 GPC DEB**<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION**<br><br>[Removal from the Superior Court of California, County of San Diego, Case No. 37-2023-00045550-CU-OE-CTL]<br><br>Complaint Filed:   October 19, 2023<br>Trial Date:              None Set |

SEV05-56:3786046_1:11-22-23

- 1 -

DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION

**TO THE CLERK OF THE ABOVE-TITLED COURT AND TO PLAINTIFF CRYSTAL JOURDEN AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, and in accordance with 28 U.S.C. §§ 1331, 1332, 1367, and 1711, Defendant 7-Eleven, Inc. (hereinafter "7-Eleven" or "Defendant") hereby removes this action—with reservation of all defenses and rights—from the Superior Court of the State of California for the County of San Diego, Case No. 37-2023-00045550, to the United States District Court for the Southern District of California,. Removal is proper on the following grounds:

## I.  TIMELINESS OF REMOVAL

1. On October 19, 2023, in the Superior Court of California, County of San Diego, plaintiff Crystal Jourden ("Plaintiff") filed a Complaint for Damages and Restitution ("Complaint" or "Compl.") against 7-Eleven, Inc. on behalf of a putative class.

2. Plaintiff's service on 7-Eleven with the Summons and Complaint was effective on November 16, 2023. See Declaration of Keith Jones ("Jones Decl.") ¶ 6 (Nov. 17, 2023). This notice of removal is therefore timely pursuant to 28 U.S.C. section 1446(b) because it is filed within 30 days after service was completed. See 28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a)(1).

3. Pursuant to 28 U.S.C. section 1446(a), true and correct copies of the Summons, Complaint, the Superior Court's Initial Case Management Conference Order, and other initiating documents contained in the service packet are attached to the concurrently filed Declaration of Julie R. Trotter ("Trotter" Decl.") as Exhibit 1.

4. On November 21, 2023, Defendant filed in the San Diego County Superior Court its Answer to Plaintiff's Complaint. A true and correct copy of the Answer to Plaintiff's Complaint is attached to the Trotter Decl. as Exhibit 2.

## II. GROUNDS FOR REMOVAL IN LIGHT OF PLAINTIFF'S ALLEGATIONS

5. Removal is proper pursuant to 28 U.S.C. sections 1441 and 1453 because this Court has subject matter jurisdiction over this action, and all claims asserted against 7-Eleven, pursuant to the Class Action Fairness Act of 2005 (hereinafter "CAFA"), 28 U.S.C. section 1332(d).

6. Plaintiff's Complaint alleges: "This action is brought as a Class Action on behalf of PLAINTIFF and similarly situated employees of DEFENDANT pursuant to Cal. Code of Civ. Proc. § 382." Compl. ¶ 12.

7. CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under a state statute or rule, namely California Code of Civil Procedure § 382, authorizing an action to be brought by one or more representative persons as a class action. See 28 U.S.C. § 1332(d)(1)(B); see also Compl. ¶ 12.

8. Plaintiff's Complaint purports to bring claims on behalf of herself and a class based on alleged violations of the California Labor Code, including minimum and overtime wages; lawful meal and/or rest periods; accurate wage statements; expense reimbursement; and timely payment of wages. Compl. ¶¶ 14. More specifically, she alleges violations of California Labor Code sections 201, 202, 203, 204, 226, 226.7, 510, 512, 1194, 1197, 1197.1, 1198, 2802. *See* Compl., *passim*. The causes of action are: 1) Unfair Competition in Violation of Cal. Bus. & Prof. Code §17200 et seq; 2) Failure to Pay Minimum Wages in Violation of Cal. Lab. Code §§ 1194, 1197 & 1197.1; 3) Failure to Pay Overtime Wages in Violation of Cal. Lab. Code §§ 510, et seq; 4) Failure to Provide Required Meal Periods in Violation of Cal. Lab. Code §§ 226.7 & 512 and the Applicable IWC Wage Order; 5) Failure to Provide Required Rest Periods in Violation of Cal. Lab. Code §§ 226.7 & 512 and the Applicable IWC Wage Order 6) Failure to Provide Wages When Due in Violation of Cal. Lab. Code §§ 201,

202 and 203; 7) Failure to Provide Accurate Itemized Statements in Violation of Cal. Lab. Code § 226; and 8) Failure to Reimburse Employees for Required Expenses in Violation of Cal. Lab. Code § 2802. *Id.* The Complaint seeks, among other remedies, unpaid wages, unpaid meal and rest period compensation, unreimbursed expenses, penalties, liquidated damages, interest, and reasonable attorneys' fees and costs. Compl. Prayer for Relief ¶¶ 1-3.

9.  Under CAFA, federal courts have original jurisdiction over class actions where the amount in controversy exceeds $5 million in the aggregate for the entire class, exclusive of interest and costs; the putative class action contains at least 100 members; and any member of the putative class is a citizen of a state different from that of any defendant. See 28 U.S.C. §§ 1332(d)(2), 15(d)(5)(B), and (d)(6).

10. 7-Eleven denies any liability as to Plaintiff's individual claims and as to the claims of the putative class members. 7-Eleven expressly reserves all of its rights, including, but not limited to, its right to file motions challenging the pleadings. However, for purposes of meeting the jurisdictional requirements for removal only, 7-Eleven submits on a good-faith basis that this action satisfies all requirements for federal jurisdiction under CAFA because, as set forth below, the allegations in the Complaint identify a putative class of more than 100 members, establish the minimum diversity of citizenship required under CAFA, and put in controversy more than $5 million in the aggregate for the entire class, exclusive of interest and costs. See 28 U.S.C. 24 §§ 1332(d)(2), (d)(5)(B), and (d)(6).

**A.   The Putative Classes Consist Of More Than 100 Members**

11. Plaintiff's putative class encompasses all "non-exempt employees" who have worked for 7-Eleven in California since October 19, 2019 (i.e., four years prior to the filing of the Complaint), who Plaintiff describes as "the California Class." Compl. ¶ 4. The Seventh Cause of Action, for alleged improper wage statements, is limited to a one year lookback, and the Sixth Cause of Action, for timely payment of wages under Labor Code sections 201-203 has a three year lookback. Compl., pages 30-32.

12. There are more than 7,000 individuals in the putative California Class. Declaration of Susan Hager ("Hager Decl.") ¶ 4 (Nov. 21, 2023). Among the California Class, 5,066 individuals have terminated their employment with 7-Eleven within the past three years (i.e. since October 19, 2020) and thus have potential claims under the Sixth Cause of Action. *Id.* ¶ 8. As with full-time employees, 7-Eleven's part-time employees are typically scheduled to work shifts of 8-hours. *Id.* ¶ 7. During the relevant time period, full-time and part-time employees earned a weighted average of $18.01 per hour. *Id.* ¶ 5.

**B.   The Amount Placed in Controversy Exceeds $5 Million**

13. Although 7-Eleven denies that Plaintiff's claims have any merit and disputes that Plaintiff is entitled to any of the sums sought in the Complaint, 7-Eleven avers, for the purposes of meeting the jurisdictional requirements for removal only, that Plaintiff's requested monetary recovery exceeds $5 million.

14. Plaintiff's causes of action—if accepted—would place in excess of $5 million in controversy, exclusive of interest and costs. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010) ("In determining the amount [in controversy], we first look to the complaint."). Here, in an effort to avoid litigating in federal court, Plaintiff attempts to short-change the class she seeks to represent by the Complaint's assertion (at paragraph 4) that "[t]he amount in controversy for the aggregate claims of the CALIFORNIA CLASS members is under five million dollars ($5,000,000.00)," but such representations are not binding. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (while plaintiff's stipulation could "tie [the plaintiff's] hands," a class action plaintiff cannot legally bind proposed class members prior to certification; stipulation did not affect the amount in controversy for other class members).

15. As demonstrated below, the $5 million threshold is easily met by considering just a subset of Plaintiff's claims and damages theories. Should Plaintiff challenge this removal requirement, 7-Eleven reserves the right to show that Plaintiff's other claims and damages theories also place more than $5 million in controversy.



AMOUNT IN CONTROVERSY AS TO MEAL PERIOD CLAIM

16. On behalf of herself and the putative California Class, Plaintiff alleges missed meal period violations in her Fourth Cause of Action. Plaintiff seeks one hour of premium pay for each day in which a required meal period was not lawfully provided. Compl. ¶ 113.

17. California Labor Code Section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . ." Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . ." California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods.

18. The statute of limitations for recovery for meal period premium pay under California Labor Code section 226.7 pay is three years. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). However, Plaintiff also alleges a claim for meal period violations as part of her unfair competition claim under Business and Professions Code section 17200, *et seq*. Compl. ¶ 69. Thus, for determining the amount in controversy, the four-year statute of limitations applies. Cal. Bus. & Prof. Code § 17208.

19. Plaintiff's Complaint claims that, "[a]s a result of their rigorous work schedules, PLAINTIFF and other CALIFORNIA CLASS Members were often not fully relieved of duty by DEFENDANT for their meal periods. Additionally, DEFENDANT's failure to provide PLAINTIFF and the CALIFORNIA CLASS Members with legally required meal breaks prior to their fifth (5th) hour of work is evidenced by DEFENDANT's business records." Compl. ¶ 112. Plaintiff also makes allegations regarding second meal period violations. *Id.*

20. Plaintiff is silent as to the actual amount of alleged meal periods she claims to have been denied, thereby precluding precise estimates of the amount in controversy. However, Plaintiff alleges wholesale meal period violations, i.e., that "Defendant [*sic*] policy caused PLAINTIFF to remain on premises, on-call and on-duty during what was supposed to be her off-duty meal periods." Compl. ¶ 52. Plaintiff alleges that her "claims are typical of the claims of the CALIFORNIA CLASS, and PLAINTIFF have [*sic*] the same interests as the other members of the class." Compl. ¶ 58. Given Plaintiff's assertion that Defendant's "policy" prevented her from being provided a proper meal period while also alleging that her "claims are typical" of those claims which could be alleged by any member of the California Class, the Complaint contemplates 100 percent violation rate for the meal period claims. Accordingly, a 100 percent violation rate can properly be assumed for purposes of calculating the amount in controversy of Plaintiff's meal period claims. See *Muniz v. Pilot Travel Centers LLC,* 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (finding a 100 percent violation rate appropriate when "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%"); *Wheatley v. Masterbrand Cabinets, LLC,* No. 18-cv-2127-JGB, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period violations per week reasonable where plaintiff alleged a "a policy and practice" of meal and rest break violations); *Agredano v. Sw. Water Co.*, No. 17-cv-02627-SJO, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods. Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than five legally required meal breaks per week. Thus, the Court finds that 'Plaintiff's own complaint alleges universal violations of meal... period laws' such that Defendants' 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia v. DHL Express*

*(USA), Inc.*, No. CV 15–890–GHK (JCx), 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable where plaintiff alleged that defendant maintained "policies, practices and procedures that caused the purported violations…").

21.  While Defendant is entitled to assume a 100 percent violation rate (i.e., five missed meal periods per workweek) given the Complaint's vague allegations, for purposes of the amount in controversy, Defendant will conservatively assume that putative class members were not provided just *one* meal period each *pay period*, i.e. which, given 7-Eleven's bi-weekly pay practices, is one meal period every two weeks. District courts have consistently upheld even higher assumptions of meal period violations as plausible for purposes of determining the amount in controversy. See, e.g., *Lopez v. Bio-Reference Laboratories, Inc.*, No. 2:21-CV-02063-KJM-DB, 2022 WL 1744993, at *2 (E.D. Cal. May 31, 2022) (finding assumption of two meal periods per workweek supported by allegations that defendants "'implemented policies and practices' of denying class members their meal [ ] breaks"); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding it reasonable to assume putative class members missed three meal periods per workweek where the complaint "offered no guidance as to the frequency of the alleged violations, only that Defendant had 'a policy and practice' of meal [ ] period violations"); *Sanchez v. Abbott Labs.*, No. 20-cv-01436, 2021 WL 2679057, at *4–5 (E.D. Cal. June 30, 2021) (finding it reasonable to assume putative class members missed three meal periods per week based on the complaint's allegation of a "pattern and practice" of denying such breaks); *Oda v. Gucci Am., Inc.*, No. 14-cv-07469, 2015 WL 93335, at *4–5 (C.D. Cal. Jan. 7, 2015) (finding it reasonable to assume putative class members missed 2.5 meal periods per week based on the complaint's allegations that class members "sometimes" did not receive all meal periods.)

22.  The meal period claim impacts at least 7,000 non-exempt hourly employees who collectively worked more than 83,826 pay periods since October 19,

2019. (See Hager Decl. ¶ 4.)  If each putative class member had just 1 missed meal break per every two weeks that they worked during this time frame, based on the average hourly pay rate, the amount in controversy would reach $1,509,706.26 for the Fourth Cause of Action alone. [$18.01 hourly rate x 83,826 pay periods = $1,509,706.26].

AMOUNT IN CONTROVERSY AS TO REST PERIOD CLAIM

23.  Plaintiff alleges missed rest period violations in her Fifth Cause of Action. Plaintiff seeks one hour of premium pay for each day in which a required rest period was not lawfully authorized and permitted.  Compl. ¶ 117.

24.  Plaintiff is silent as to the actual number of rest periods she claims to have been denied, but again alleges wholesale violations of rest break requirements: "When Defendant provided PLAINTIFF with a rest break, they required PLAINTIFF to remain on premises, on-duty and on-call for the rest break."  Compl. ¶ 52.  Plaintiff alleges that her "claims are typical of the claims of the CALIFORNIA CLASS, and PLAINTIFF have [*sic*] the same interests as the other members of the class."  Compl. ¶ 58.  Again, this vague language easily allows an inference of at least 1 violation per pay period for each putative California Class member for the past three years.

25.  For the rest break claim in the Fifth Cause of Action, notwithstanding the far-reaching allegations in the Complaint impacting the amount in controversy, Defendant will conservatively assume that putative class members were not provided just ***one*** rest period each ***pay period***.  The same numbers and analysis as set forth as to the meal periods (*supra*, paragraph 22) holds true, which separately adds at least another $1,509,706.26 to the total amount in controversy.  [$18.01 hourly rate x 83,826 pay periods = $1,509,706.26].  Therefore, for meal and rest breaks alone, the amount in controversy exceeds $3 Million. [$1,509,706.26 + $1,509,706.26 = $3,019,412.52]

AMOUNT IN CONTROVERSY AS TO ALLEGED UNPAID OVERTIME

26.  The Third Cause of Action is for overtime wages.  The Complaint asserts that "PLAINTIFF and other members of the CALIFORNIA CLASS" had to "perform

pre-shift or post-shift work, including but not limited to, assisting customers and other employees," resulting in "off-the-clock" work. Compl. ¶ 24. Further, the Complaint alleges: "DEFENDANT'S policies and practices deprived PLAINTIFF and other CALIFORNIA CLASS MEMBERS of all minimum, regular, overtime, and doubletime wages owed for the off-the-clock work activities." Compl. ¶ 29.

27. While 7-Eleven denies off-the-clock work, for purposes of the amount in controversy, given Plaintiff's allegations, 7-Eleven will conservatively estimate 1 hour of off-the-clock work per pay period for the putative California Class members. *See Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123 (C.D. Cal. May. 9, 2011) (the court found a conservative estimate of "consistent" overtime work was 1 hour per week). If each of the 7,000-plus putative class members had 1 hour of off-the-clock overtime work in each 7-Eleven pay period (i.e., every two weeks) in the four years prior to the Complaint's filing, the amount in controversy on just the overtime claim is $2,264,559. [$18.01 x 1.5 x 83,826 pay periods = $2,264,559.39]. Combined with the minimum amount in controversy as to meal and rest breaks, the amount in controversy already exceeds the $5 million threshold. [$3,019,412.52 for meal and rest break + $2,264,559.39 in overtime = $5,283,971.91].

## AMOUNT IN CONTROVERSY AS TO WAITING TIME PENALTIES

28. Plaintiff's Sixth Cause of Action, which asserts waiting time penalties for alleged delayed payment of wages, encompasses all persons whose employment by Defendant in California ended at any time in the past three years since the filing of the Complaint, i.e., since October 19, 2020 (plus applicable tolling).

29. Plaintiff alleges in the Sixth Cause of Action that she and these putative class members are entitled to 30 days' continuation wages as a penalty under Labor Code section 203. Compl. ¶¶ 48, 124-126. Plaintiff contends that this is due to Defendant's alleged failure to pay terminated employees all their earned compensation, including payment of "payment of wages to these employees who missed meal and rest breaks, as required by law." Compl. ¶ 125. The Complaint demands waiting time pay

"as penalty for not paying all wages due at time of termination for **all employees** who terminated employment during the CLASS PERIOD . . ." *Id.* ¶ 126 (emphasis added). Accordingly, a 100 percent presumed violation rate is appropriate for this analysis. *See, e.g.*, *Johnson v. Parsec, In*c., 22-cv-6930, 2022 WL 17407960, at *1 (C.D. Cal. Dec. 2, 2022) (it is logical to assume a 100% violation rate for waiting time penalties when the complaint has otherwise alleged that meal and rest breaks "regularly" occurred, and were typical across the class).

30. Under the legal theories presented by Plaintiff's Complaint, every one of the 5,066 employees terminated in the three years prior to the filing of the Complaint are due waiting time penalties. See Compl. Fourth and Fifth Causes of Action (asserting non-payment of meal and rest break premium pay to non-exempt employees which triggers waiting time penalties). Defendant denies all liability in relation to the waiting time penalties claim, denies that any wages and penalties are due, and reserves all rights and defenses associated therewith. However, for the sole purpose of removal, even assuming just 10 percent of the 5,066 terminated employees in the past three years (i.e., 506 employees) are due premium pay, this adds another $2,187,134.30 to the amount in controversy. [$18.01 x 8 hours per day x 30 days x 506 terminated employees = $2,187,134.40]. This is in addition to amounts in excess of the $5 million already set forth above (*supra*, paragraph 27).

C. **Diversity of Citizenship Exists**

31. CAFA provides that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332(d)(2)(A) (emphasis added). Only minimal diversity is required. It is thus sufficient if any member of the putative class and only one defendant are citizens of different states. *Id.* In this case, at the very least, Plaintiff and 7-Eleven are diverse.

32. For diversity jurisdiction purposes, an individual is a citizen of any state where he or she is domiciled at the time the lawsuit is filed. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residency, though not the equivalent of domicile, can create a rebuttable presumption of domicile supporting diversity of citizenship. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *see also State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (a party's residence is prima facie evidence of domicile for purposes of determining citizenship).

33. For diversity jurisdiction purposes, a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

34. Plaintiff alleges that she worked for 7-Eleven in California, and 7-Eleven's records reflect that she provided a California driver's license to confirm eligibility of employment and reported an address in California through the end of her employment in July 2023, all of which identify her as a resident of California. Compl. ¶ 2; Hager Decl. ¶¶ 10-11, Exh. A-B. Further, on the face of the Complaint, Plaintiff seeks to represent all current employees of 7-Eleven in California. Compl. ¶ 4. Meanwhile, 7-Eleven, has been at all times relevant to the case and at all times since the filing of the Complaint, including at the time of this Notice of Removal, a corporation formed in the State of Texas with its principal place of business in Texas. See Jones Decl. ¶¶ 4-5. Thus, 7-Eleven is not a citizen of the State of California. Since at least one class member is a resident of California and Defendant is a citizen of Texas, the requirement of minimal [and complete] diversity is met.

### III. THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

35. Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

- This is a civil action that is a class action within the meaning of § 1332(d)(1)(B)

- This action involves a putative class of more than 100 persons as required by § 1332(d)(5)(B);

- The amount in controversy exceeds $5 million, exclusive of interest and costs as required by section 1332(d)(2); and

- A member of the putative class is a citizen of a state different from Defendant as required by section 1332(d)(2)(A).

Accordingly, removal of this action is proper under 28 U.S.C. sections 1441, 1446, and 1453.

36. The United States District Court for the Southern District is the appropriate venue for removal pursuant to 28 U.S.C. section 1441(a) because it embraces the place where Plaintiff originally filed the case, in the Superior Court of San Diego County. See 28 U.S.C. § 84(c); 28 U.S.C. § 1441(a).

37. Upon filing the Notice of Removal, 7-Eleven will furnish written notice to Plaintiff's counsel and will file and serve a copy of this Notice with the Clerk of the Superior Court of San Diego County, pursuant to 28 U.S.C. section 1446(d).

**WHEREFORE**, Defendant hereby removes to the Court the above action pending against it in the Superior Court of California, San Diego County.

Dated: November 22, 2023

WELTER LAW FIRM, P.C.
Eric A. Welter

CALL & JENSEN
A Professional Corporation
Julie R. Trotter
Mireya A.R. Llaurado

By: */s/ Julie R. Trotter*
Julie R. Trotter

Attorneys for Defendant 7-Eleven, Inc.